# **Exhibit A**

Preska, J.

416146.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-8-14

-----------------------------------------------------------x
AUDEMARS PIGUET HOLDING S.A. and
AUDEMARS PIGUET (NORTH AMERICA) INC.,

    Plaintiffs,

v.

SWISS WATCH INTERNATIONAL, INC.
d/b/a SWISS LEGEND d/b/a SWI GROUP;
ILS HOLDINGS, LLC d/b/a
*WORLDOFWATCHES.COM* and
LIOR BEN-SHMUEL,

    Defendants.
-----------------------------------------------------------x

CIVIL ACTION

No. 12 Civ. 5423(LAP)

**FINAL JUDGMENT**

Whereas, the Court having held a bench trial in the above action, and having found for Plaintiffs in the Opinion and Order entered January 6, 2014 (DE 165); and the Court having ruled upon Plaintiffs' post-trial motions by granting in part and denying in part such motions, in the Opinion, Order, and Judgment entered August 20, 2014 (DE 196); and Plaintiffs having requested entry of a separate judgment as required by Rule 58, Fed.R.Civ.P.; it is hereby

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Opinion and Order entered January 6, 2014 (DE 165) and the Opinion, Order, and Judgment entered August 20, 2014 (DE 196), judgment is hereby entered in favor of plaintiffs AUDEMARS PIGUET HOLDING S.A. and AUDEMARS PIGUET (NORTH AMERICA) INC. and against defendants SWISS WATCH INTERNATIONAL, INC. d/b/a SWISS LEGEND d/b/a SWI GROUP; ILS HOLDINGS, LLC d/b/a *WORLDOFWATCHES.COM* and

LIOR BEN-SHMUEL, jointly and severally, in the amount of $11,737,840.15, which consists of $10,847,784.24 in damages, $888,511.42 in attorney's fees and costs, and $1,544.49 in transcript costs; and further that:

1. Defendants, their officers, agents, servants, employees, attorneys and all other persons who are in active concert or participation with them, are hereby permanently enjoined

    A. From manufacturing, importing, distributing, shipping, advertising, marketing, promoting, selling or offering from sale any product bearing Plaintiffs' Royal Oak trade dress, including U.S. Trademark registrations Nos. 2,866,069, No. 3,480,826, No. 4,232,239, and No. 4,232,240, or any trade dress confusingly similar thereto or likely to cause confusion therewith, in the sale, offering for sale, distribution or advertising of any products;

    B. From manufacturing, importing, distributing, shipping, advertising, marketing, promoting, selling or offering from sale watches identified by partial model numbers or SKU numbers SL-10541, SL-10534, SL-10535, or any colorable variations thereof, or any product containing a confusingly similar trade dress; and further that

2. Within fifteen (15) calendar days of the entry of this Judgment, Defendants shall recall all remaining inventory of any Trimix watches, including those identified by partial model numbers or SKU numbers SL-10541, SL-10534, SL-10535, from any customers known or believed by Defendants to have acquired such watches for the purpose of resale on any retail platform. At 30

and 60 day intervals after the entry of this Judgment, Defendants shall file and serve a report in accordance with 15 U.S.C. § 1116 (a), in writing, and affirmed under oath or penalty of perjury, that sets forth in detail the manner and form in which Defendants have complied with this recall order.

**APPROVED:**

Dated: September **3**, 2014
New York, New York

*/s/ Loretta A. Preska*
Hon. Loretta A. Preska, U.S.D.J.

**ENTERED:**

Dated: September ____, 2014
New York, New York

RUBY J. KRAJICK
CLERK OF THE COURT

By: /s/ A. Mango
Deputy Clerk

- 3 -

# **Exhibit B**

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
AUDEMARS PIGUET HOLDING S.A.,       :
AUDEMARS PIGUET (NORTH AMERICA)     :
INC.,                               :
                  Plaintiffs,       :
                                    :   12 Civ. 5423 (LAP)
          - v. -                    :
                                    :   OPINION AND ORDER
SWISS WATCH INTERNATIONAL, INC.     :
d/b/a SWISS LEGEND d/b/a SWI GROUP; :
ILS HOLDINGS, LLC d/b/a             :
WORLDOFWATCHES.COM, and             :
LIOR BEN-SHMUEL,                    :
                  Defendants.       :
------------------------------------X
```

LORETTA A. PRESKA, Chief United States District Judge:

Before the Court are two cross-motions to amend and correct the judgment issued in this trademark infringement case on August 20, 2014 [Dkt. nos. 196, 200, 207].[1] The parties raise two primary questions: (1) whether Plaintiffs are entitled to treble damages under Section 1117(b) of the Lanham Act, 15 U.S.C. § 1117(b), or any other provision of law, and (2) whether two Trimix watch models that were not considered by Judge Baer at trial are covered by the injunction and recall order. For the reasons discussed below, the Court finds that Defendants' watches do not counterfeit the Royal Oak design and enhanced damages are not appropriate. However, the two additional watch

---

[1] Unless otherwise noted, docket numbers referenced herein are those assigned to documents in Case No. 12 Civ. 5423.

models SL-10540 and SL-10542 are not a safe distance from Plaintiffs' registered trademark and will be enjoined.

I. Background

In June 2013, Judge Harold Baer, Jr. held a bench trial in this case and issued an opinion containing findings of fact and conclusions of law on January 6, 2014. [Dkt no. 165] ("the January opinion"). In an August 20, 2014, opinion and judgment, [Dkt no. 196] ("the August opinion") this court utilized these findings to enter a judgment awarding trebled profits to Plaintiffs, an order enjoining Defendants from further infringements on the Royal Oak trade dress, and a recall of the remaining Trimix inventory. Familiarity with both of these opinions is assumed.

The trial in June 2013 concerned only two Trimix models, SL-10541 and SL-10534. Afterwards, Defendants voluntarily identified SL-10535 as having the same attributes that Judge Baer found to infringe on the Royal Oak trademark, and these three models were explicitly named in the injunction ("the enjoined models"). In August and September of 2013, Swiss Legend began selling two new watch models, SL-10540 and SL-10542 (the "additional models"). Defendants claim that these new models do not infringe Plaintiffs' trade dress because they have

2

no screws or bolts on the bezel of the watch. The model SL-10542 has a plain bezel and the model SL-10540 has a "diver's bezel" which includes minute and hour marks around the perimeter of the watch. These designs had been in development prior to trial, and prototypes were displayed at the 2012 BaselWorld watch trade show. They were not discussed at trial or during post-trial correspondence concerning the text of the Court's judgment. After this Court issued a final judgment, however, Defendants contacted Plaintiffs to seek their agreement that the additional models need not be recalled under the Court's order. (Block Decl. ¶6, Dkt No. 202.) After Plaintiffs objected to the additional models, Defendants took steps to cease their sale pending the Court's consideration of the motion at hand. (Id. at ¶¶4-5.)

II. Enhanced Damages

In Judge Baer's January opinion, pre-trial damages were trebled pursuant to 15 U.S.C. § 1117(b) on the grounds that the enjoined models were counterfeits of the Royal Oak design. This court correspondingly trebled post-trial damages in the August opinion. Defendants ask for reconsideration of this decision on the grounds that Judge Baer did not make an explicit finding in his January opinion that Trimix watches meet the definition of a "counterfeit" mark, "a spurious mark which is identical with, or

3

substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

To prevail on a request for reconsideration generally requires "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). Imposing a remedy specific to counterfeiting without applying the legal standard that defines counterfeiting certainly rises to this level.

Judge Baer's January opinion cites U.S.C. § 1117(b), which awards treble profits "in a case involving use of a counterfeit mark" if it was used "intentionally. . . knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title)." It goes on to address 15 U.S.C. § 1116(d), which defines a "counterfeit mark" as "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold. . . whether or not the person against whom relief is sought knew such mark was so registered." The opinion concludes that "[s]ince at least two of Plaintiffs' marks were registered. . . the Trimix watches are considered counterfeit under the Lanham Act." However, the opinion never cites the definition of

4

the term "counterfeit" itself given in 15 U.S.C. § 1127, "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark" and never applies that definition.

While Judge Baer did state that Defendant Ben-Shmuel likely intentionally copied the Royal Oak design because "Defendants' Trimix watch replicated *almost identically* the Plaintiffs' protected trade dress" (emphasis added), this statement is not connected to his analysis of counterfeiting and does not address whether or not Defendants' mark is a "spurious" one. (January opinion, Dkt no. 165 at 31.) See GMA Accessories, Inc. v. BOP, LLC, 765 F. Supp. 2d 457, 472 (S.D.N.Y. 2011) aff'd sub nom GMA Accessories, Inc. v. Elec. Wonderland, Inc., 558 F. App'x 116 (2d Cir. 2014) (noting that there is "little caselaw" fleshing out "the requirement that a counterfeit mark be a 'spurious' mark" but applying the *Black's Law Dictionary* definition of the word as "[d]eceptively suggesting an erroneous origin; fake."); U.S. v. Cone, 714 F.3d 197, 207 (4th Cir. 2013) (also applying the definition from *Black's Law Dictionary*).

Because Judge Baer did not make a finding that the infringing marks were "spurious" and "substantially indistinguishable" from Plaintiffs' registered marks, the Court must make this determination based on the record and an

5

examination of the watches in question. Having done so, the Court finds that the Trimix watches do not counterfeit Plaintiffs' registered trademarks.

Plaintiffs argue that the enjoined models contain a counterfeit of their registered trademark for the bezel design of the Royal Oak watch line. But while the Trimix octagonal bezel does infringe on Plaintiffs' trademark, the two marks are not "substantially indistinguishable." The Trimix watches contain bolts that are shaped differently from the Royal Oak screws and are arrayed in a different pattern. Even if the mark itself were indistinguishable, the context of the entire watch, which includes a different canteen crown, watch band attachment, and watch face, as well as the Trimix and Swiss Legend names and logos, make clear that Defendants' use of the bezel mark is not "spurious." The essence of counterfeiting is that the use of the infringing mark "seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation.'" Gucci America, Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012). Here, Defendants plainly are not passing off their design as a Royal Oak. See, e.g., Birmingham v. Mizuno USA, Inc., No. 5:09-CV-0566(GTS), 2011 WL 1299356, at *8 (N.D.N.Y. Mar. 31, 2011) (finding that marks were "placed on products that are substantially

6

distinguishable."). Associated Gen. Contractors of Am. v. Stokes, No. 1:11-CV-795 (GBL), 2013 WL 1155512, at *6 (E.D. Va. Mar. 19, 2013) (fact that mark was accompanied by distinct company name precluded finding of counterfeiting).

Because Defendants' watches infringe on Plaintiffs' registered trade dress but do not counterfeit it, the profits awarded to Plaintiffs should not be trebled. While there are other legal avenues to enhance the award of damages, Plaintiffs have not adequately established that they are entitled to these special measures. Section 1117(a) allows the court to enter a discretionary amount of damages as "compensation and not a penalty" but only if the "recovery based on profits is . . . inadequate." Plaintiffs have not established this. Nor have they established that Defendants' willful infringement on their trademark reached the heightened level required for punitive damages under New York law.

Plaintiffs argue that Defendants should not be allowed to contest whether the Trimix watches are counterfeit because they failed to do so fully at trial. This argument is unpersuasive. While counterfeiting must meet an additional legal standard, it is essentially an extreme case of trademark infringement. See Gucci America, Inc., 868 F. Supp. 2d at 242 ("[C]ounterfeiting is the 'hard core' or 'first degree' of trademark infringement")

7

(citation omitted). Defendants' vigorous defense against trademark infringement was sufficient to oppose a finding of counterfeiting. It was not inappropriate for Plaintiffs to tailor their arguments on reconsideration to the specific questions most pressing to the court in light of Judge Baer's findings.

Finally, Judge Baer's decision to award attorneys' fees and costs to Plaintiffs will remain in place on the basis of 15 U.S.C. § 1117(a), which provides that "plaintiff shall be entitled. . . to recover. . . the costs of the action" and that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Judge Baer found explicitly that Defendants acted in bad faith and relied on this finding throughout his opinion, including in ordering the "extreme remedy" of a recall. (January Opinion, Dkt no. 165 at 17, 19, 27, 33). See also Santana Products, Inc. v. Sylvester & Associates, Ltd., 279 F. App'x 42, 43 (2d Cir. 2008) (citations omitted) ("Attorney's fees should be awarded pursuant to § 1117 'only "on evidence of fraud or bad faith."'") Furthermore, Plaintiffs' request for attorneys' fees was unopposed, and Defendants have raised no further objections to it. (See D's Resp. to Pl's Application for Additional Treble Profits and

8

Attorney's Fees and Costs, Dkt no. 182; D's Mem. Supp. Motion to Amend and Correct Judgment, Dkt no. 201.)

III. Additional Watch Designs

Both Judge Baer's January opinion and this court's August judgment [Dkt nos. 165, 196] enjoined Defendants from manufacturing or selling watches with "SKU numbers SL-10541, SL-10534, SL-10535, or any colorable variations thereof, or any product containing a confusingly similar trade dress" and required the recall of "all remaining inventory of any Trimix watches, including. . . SKU numbers SL-10541, SL-10534, [and] SL-10535." The parties agree that at the time of his opinion, Judge Baer believed that the enjoined models represented the entire Trimix line. In view of the fact that future models may be introduced under the trade name Trimix, which has not been challenged as infringing in any way, this language will be removed from the injunction.

Plaintiffs argue that the two additional Trimix models should be enjoined as well either as colorable variations of the infringing models or under the "safe distance rule," the principle that once a Defendant has infringed on a trademark, he or she must give it a wide berth. Oral-B Laboratories, Inc. v. Mi-Lor Corp., 810 F.2d 20, 24 (2d Cir.1987) ("[I]t was

9

[defendant's] duty to keep a safe distance from the line drawn by the district court's injunction ... a party who has once infringed a trademark may be required to suffer a position less advantageous than that of an innocent party."). See also Majestic Drug Co. v. Olla Beauty Supply, Inc., No. 97 CIV. 0046 (LAP), 1997 WL 37955, at *13 (S.D.N.Y. Jan. 31, 1997).

Although it is a close question in this instance, I find that the additional Trimix models are not a safe distance away from Plaintiffs' protected trademarks. While the additional models lack the pattern of screws around their octagonal bezels, they continue to share the overall shape of the Royal Oak design, including the thick octagonal bezel around a round face and sloping, unitary case. The overall effect of these design elements is that the watch continues to look strikingly similar to the enjoined models and to the Royal Oak. These models alone might not have qualified as infringements, but their sale would allow Defendants to continue profiting from a design concept that drafts on the good will of Audemars Piguet.

Finally, Defendants had many opportunities to bring the existence of these models to the court's attention in order to clarify their status. While these models may not have been sold to the public until after trial, Defendants acknowledge that prototypes existed as early as 2012. Furthermore, Defendants

10

were invited to participate in the process of crafting a judgment after the additional Trimix models were being sold and failed to disclose their existence. In a January 30th letter, Defendants even pictured examples of other Swiss Legend watch lines which they feared could be read to fall under the language of the injunction: three models with round bezels that included screws and the "Octomatic" watch, which had an octagonal bezel and face and has repeatedly been remarked to bear little resemblance to the Royal Oak. [Dkt. No. 171]. Judge Baer would have been entitled to presume that these models were the closest in appearance to the infringing models among Swiss Legend's line. Whether the omission of the additional Trimix models was in bad faith or merely an oversight, it exemplifies the gamesmanship Defendants might engage in, forcing Plaintiffs and courts to expend great energy in policing future infringement. The safe distance rule creates a buffer designed to spare Plaintiffs from recurring, piecemeal actions to defend their trademark. The additional models fall within that buffer zone.

The manufacture and sale of these additional Trimix models will be enjoined. However, Defendants will not be required to conduct a recall of them. A recall is an "extreme remedy" requiring greater justification than an injunction alone. Conopco Inc. v. 3DO Co., 99 CV 10893(JSM), 1999 WL 1277957 at *3

11

(S.D.N.Y. Dec. 7, 1999). Courts must consider (1) "the defendant's good faith or bad faith," (2) "the likelihood of diversion of customers from plaintiff to defendant", (3) "the extent of the burden entailed in a recall," and (4) "the probability that the plaintiff would benefit from such an order." Cherry River Music Co. v. Simitar Entm't, Inc., 38 F.Supp.2d 310, 322 (S.D.N.Y.1999) (citing Perfect Fit. Indus., Inc. v. Acme Quilting Co., 646 F.2d 800, 807 (2d Cir.1981)). Recalls are often ordered "where there is evidence that a defendant's infringement was intentional, including where the defendant continued infringing after receiving notice of its potentially unlawful conduct." Tecnimed SRL v. Kidz-Med, Inc., 763 F. Supp. 2d 395, 414 (S.D.N.Y. 2011) aff'd, 462 F. App'x 31 (2d Cir. 2012) (collecting cases.) In ordering a recall, Judge Baer noted prominently that Defendants continued to distribute the enjoined models after receiving a cease and desist order from Plaintiffs and the initiation of this lawsuit. (January opinion, Dkt. no. 165 at 27) ("whatever the cost [of the recall] may be, Defendants are primarily to blame for incurring these costs, as they continued providing retailers with the Trimix watches after this lawsuit began.") In contrast, Defendants have ceased selling the additional models until their status is adjudicated. Furthermore, because these models do not directly

12

infringe, the likelihood of diverting Plaintiffs' customers and the overall benefit to Plaintiffs is further lessened.

IV. Conclusion

For the reasons discussed above, Judge Baer's conclusion that the enjoined watches are counterfeit is reversed upon reconsideration and the final judgment will be modified to reflect an award of single, not treble profits. The additional Trimix watch models, SL-10540 and SL-10542, will be added to the list of specific models to be enjoined but will not be added to the recall order.

SO ORDERED.

Dated:   New York, New York
         January 12, 2015

*Loretta A. Preska*
LORETTA A. PRESKA
Chief United States District Judge

13